# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

August 27, 2012

To:  Laura A. Briggs
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis , IN 46204-0000

| No.: 11-3420 | DARYL SCRUGGS,<br>Plaintiff - Appellant<br><br>v.<br><br>CARRIER CORPORATION,<br>Defendant - Appellee |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:09-cv-00984-SEB-MJD<br>Southern District of Indiana, Indianapolis Division<br>District Judge Sarah Evans Barker ||

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

| AMOUNT OF BILL OF COSTS (do not include the $): | 169.20 |
|---|---|
| | |
| DATE OF MANDATE OR AGENCY CLOSING LETTER ISSUANCE: | 08/27/2012 |

| | |
|---|---|
| **RECORD ON APPEAL STATUS:** | No record to be returned |

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**　　8/27/12
_____

**Received by:**　　*Theresa M. Amato*
_____

form name: **c7_Mandate**(form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## BILL OF COSTS

August 27, 2012

Taxed in Favor of: **Appellee Carrier Corporation**

| No.: 11-3420 | DARYL SCRUGGS,<br>Plaintiff - Appellant<br><br>v.<br><br>CARRIER CORPORATION,<br>Defendant - Appellee |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:09-cv-00984-SEB-MJD<br>Southern District of Indiana, Indianapolis Division<br>District Judge Sarah Evans Barker ||

The mandate or agency closing letter issued in this cause on August 27, 2012.

BILL OF COSTS issued in the amount of: $169.20.

|   |   | Cost of Each Item | Total Cost Each Item |
|---|---|---|---|
| 1. | For docketing a case on appeal or review or docketing any other proceeding: _____ | _____ | _____ |
| 2. | For reproduction of any record or paper, per page: _____ | _____ | _____ |
| 3. | For reproduction of briefs: | \_$169.20\_\_\_\_ | \_$169.20\_\_\_\_ |

|   | | | |
|---|---|---|---|
| 4. | _____ | _____ | _____ |
|   | _____ | _____ | _____ |
|   | _____ | | |
| 5. | _____ | | |
|   | _____ | _____ | _____ |
|   | _____ | | |
|   | TOTAL: | _$169.20____ | |

form name: **c7_BillOfCosts**(form ID: **140**)

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

**CERTIFIED COPY**
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

August 3, 2012

Before:

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| No.: 11-3420 | DARYL SCRUGGS, Plaintiff - Appellant  v.  CARRIER CORPORATION, Defendant - Appellee |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:09-cv-00984-SEB-MJD Southern District of Indiana, Indianapolis Division District Judge Sarah Evans Barker ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

In the

# United States Court of Appeals
## For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 11-3420

DARYL SCRUGGS,

    *Plaintiff-Appellant*,

*v.*

CARRIER CORPORATION,

    *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-CV-984—**Sarah Evans Barker**, *Judge.*

ARGUED APRIL 17, 2012—DECIDED AUGUST 3, 2012

Before BAUER, KANNE, and SYKES, *Circuit Judges*.

KANNE, *Circuit Judge*. In 2006, Carrier Corporation set out to remedy an excessive employee absenteeism problem which had developed at its Indianapolis manufacturing plant. As part of its plan, Carrier hired a private investigator to follow approximately thirty-five employees who were suspected of abusing the company's leave policies. One of these employees was Daryl Scruggs, who was authorized to take intermittent leave under the

2                                                    No. 11-3420

Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, to care for his mother in a nursing home. After surveillance revealed that Scruggs never left his home on a day he requested FMLA leave, Carrier suspended Scruggs pending further investigation. Scruggs submitted several documents to demonstrate that he picked up his mother from the nursing home on that day and took her to a doctor's appointment, but Carrier believed the documents were suspicious and inconsistent. Accordingly, Carrier terminated Scruggs for misusing his FMLA leave. Because we find that Carrier had an "honest suspicion" that Scruggs misused his FMLA leave, we affirm the district court's grant of summary judgment in favor of Carrier.

### I. BACKGROUND

Carrier manufactures refrigeration, air conditioning, and heating equipment. Scruggs worked for Carrier in its Indianapolis manufacturing plant for approximately twenty-one years, from 1986 to 2007. At the time of his termination, Scruggs worked as a brazier[1] four days a week from 6:30 a.m. to 4:30 p.m. In 2004, Scruggs's mother was moved to a nursing home, requiring Scruggs to seek intermittent FMLA leave to assist in his mother's care. From 2004 to 2007, Scruggs submitted FMLA certification paperwork on five occasions. All but the last of these certifications permitted Scruggs to take

---

[1] According to Carrier, a brazier is "an employee who torches parts onto fan coils." (Appellee's Br. at 3-4.)

No. 11-3420                                                            3

leave for nursing home visits and transportation to doctor's appointments. The fifth certification, which was in effect at the time of his termination, permitted Scruggs to take his mother to doctor's appointments once every six months and did not mention nursing home visits. Carrier approved all of Scruggs's requests for FMLA leave.

In 2006, Carrier implemented a new plan to combat employee absenteeism and suspected FMLA abuse. First, Carrier centralized the processing of all medical-leave requests, including FMLA leave, by transferring responsibility to the Medical Department. Previously, the Human Resources Department handled FMLA requests, while the Medical Department handled all other medical-leave requests. Next, Carrier instituted new procedures for employees taking FMLA leave: rather than simply inform their supervisor they were taking leave, employees were required to sign out with the Medical Department on days FMLA leave was used. Finally, Carrier hired McGough and Associates ("McGough") to conduct surveillance on approximately thirty-five employees who were suspected of misusing leave or had a high number of unexcused absences.

At Carrier's direction, McGough followed Scruggs on three occasions. McGough found no evidence that Scruggs was misusing his FMLA leave on either of the first two occasions. On July 24, 2007, Carrier requested that McGough follow Scruggs for a third time after Scruggs reported to Carrier that he was taking FMLA leave for the entire day. An investigator set up video surveillance in front of Scruggs's home from approxi-

Case 1:09-cv-00984-SEB-MJD   Document 67   Filed 08/27/12   Page 9 of 18 PageID #: 2105
Case: 11-3420   Document: 00711829076   Filed: 08/27/2012   Pages: 13   (9 of 18)

4 No. 11-3420

mately 8:00 a.m. to 4:30 p.m. During this time, the investigator did not observe either of Scruggs's vehicles leave the driveway, and saw Scruggs leave his house only once, when he appeared briefly to retrieve mail from his mailbox. Scruggs returned to work the following day without incident, and Carrier approved Scruggs's subsequent requests to use FMLA leave on July 26, July 27, and August 8.

McGough provided its report and the video surveillance from July 24 to Carrier on August 7. After reviewing the video, Carrier's Senior Labor Relations Manager Rejeana Pendleton and Labor Relations Representative Nicholas Gaughan believed that Scruggs did not leave his home at all on July 24. Accordingly, Pendleton and Gaughan met with Scruggs on August 9 to allow Scruggs an opportunity to explain his absence. Scruggs stated that he could not recall the events of July 24, but he did not abuse his FMLA leave and was helping his mother that day. Gaughan told Scruggs that he was suspended pending further investigation for his violation of Plant Rule 10 (falsifying company documents). According to Carrier, Plant Rule 10 is the mechanism used to terminate an employee who misuses FMLA leave.

Following his suspension, Scruggs provided documentation from his mother's doctor and the nursing home as evidence that he was assisting his mother on July 24. This evidence included: (1) a letter dated August 9 from the business office manager of the nursing home stating that Scruggs was at the nursing home on July 24 to take his mother out of the facility for appointments; (2) a sign-out

No. 11-3420                                                    5

sheet from the nursing home noting that Scruggs signed his mother out on July 24 at 11:30 a.m.; and (3) three nearly identical notes from Dr. R. Jeffrey Price, dated August 17. The first note from Dr. Price stated that Scruggs is his mother's only means of transportation and he mistakenly brought her to a doctor's appointment on July 24, although the appointment was scheduled for September 2007. The second note was the same, except for an additional notation which indicated that Scruggs was at the doctor's office sometime between 10:00 and 10:30 a.m. The third note added "per Dr. R. Jeffrey Price" to the prior notation.

   Pendleton and Gaughan reviewed Scruggs's documentation and compared it to their own records and the surveillance video. They observed that Scruggs had signed his mother out on the sign-out sheet provided by the nursing home only three or four times in 2007, although during that same time period he requested FMLA leave on several other occasions. Further, although Scruggs insisted he was the only one who could transport his mother, others had signed his mother out. Additionally, the documentation from the nursing home and the doctor's office was inconsistent, as Scruggs took his mother to the doctor at approximately 10:30 a.m., but did not check her out of the nursing home until 11:30 a.m.

   After considering all of the evidence, Carrier terminated Scruggs for violating Plant Rule 10 on August 17, 2007. A grievance hearing took place on August 23. During this hearing, Scruggs explained that, on the morning of

6                                              No. 11-3420

July 24, his brother picked him up at 8:00 a.m. Scruggs left his house through the back door. Scruggs and his brother then picked up their mother from the nursing home, took her out to breakfast, and transported her to the doctor's office. Afterwards, Scruggs was dropped off at his neighbor's house at 11:00 a.m. and returned home through his back door. Scruggs could not recall the name of his neighbor when questioned. He also stated that he believed it was too late in the day to return to work for the remainder of his shift. When questioned as to why the nursing home sign-out sheet noted he checked his mother out at 11:30 a.m., Scruggs stated that the sign-out sheet was wrong. Pendleton did not find Scruggs's account to be credible and denied his grievance.

   Scruggs filed suit in state court on July 21, 2009, and Carrier removed the case to federal court on August 10, 2009. Scruggs's complaint asserts claims of interference and retaliation under the FMLA. Following discovery, the parties filed cross-motions for summary judgment. The district court considered these motions and held that, although there was a question of fact as to whether Scruggs actually used his FMLA leave for an approved purpose, it was undisputed that Carrier had an "honest suspicion" that Scruggs misused his FMLA leave. *See Crouch v. Whirlpool Corp.*, 447 F.3d 984, 986 (7th Cir. 2006) ("[E]ven an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's substantive rights FMLA claim."). Accordingly, the

No. 11-3420 7

district court granted summary judgment in favor of Carrier. Scruggs timely appealed.

## II. ANALYSIS

We review a district court's order on cross-motions for summary judgment *de novo*. *Clarendon Nat'l Ins. Co. v. Medina*, 645 F.3d 928, 933 (7th Cir. 2011). We view all facts and draw all reasonable inferences in favor of the party against whom summary judgment was granted. *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011). Here, that party is Scruggs. Thus, summary judgment is appropriate only if Carrier demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the FMLA, an eligible employee is entitled to as many as twelve weeks of leave per year for a variety of reasons, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Such leave may be taken intermittently. *Id*. § 2612(b)(1). It is undisputed that Scruggs was an eligible employee who requested FMLA leave intermittently from 2004 to 2007 to care for his ailing mother.

An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." *Id*. § 2615(a)(1). In addition, "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against

any individual for opposing any practice made unlawful by [the FMLA]." *Id.* § 2615(a)(2). Scruggs alleges that Carrier violated both of these provisions by interfering with his FMLA rights and retaliating against him for requesting and taking FMLA leave.

*A. Interference Claim*

Scruggs alleges that Carrier's decision to terminate him interfered with his right to reinstatement and his right to continue to take intermittent leave to care for his mother. "To prevail on a claim for FMLA interference, the employee must prove that: (1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled." *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). An interference claim does not require an employee to prove discriminatory intent on the part of the employer; rather, such a claim "requires only proof that the employer denied the employee his or her entitlements under the Act." *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443 (7th Cir. 2011) (*quoting Goelzer v. Sheboygan Cnty., Wis.*, 604 F.3d 987, 995 (7th Cir. 2010)).

An employee who takes leave under the FMLA is only entitled to reinstatement if he "takes leave under [the FMLA] for the intended purpose of the leave." 29 U.S.C. § 2614(a)(1). Thus, "an employer can defeat an interference claim by showing, among other things, that the employee did not take leave 'for the intended

No. 11-3420    9

purpose.'" *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008) (*quoting Crouch*, 447 F.3d at 986). In the Seventh Circuit, because an employee has "no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed," 29 C.F.R. § 825.216(a), an employer need only show that "it refused to reinstate the employee based on an 'honest suspicion' that she was abusing her leave," *Vail*, 533 F.3d at 909. *Accord Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997) ("In other words, because Navistar lawfully could have terminated Kariotis after suspecting she committed fraud while on duty, the company can discharge her after suspecting she committed fraud while on leave."). We agree with the district court that Carrier has shown that it held an "honest suspicion" that Scruggs was abusing his FMLA leave.

In *Vail*, we found that an employer held an "honest suspicion" that an employee suffering from migraines misused her FMLA leave after an off-duty police officer hired by the employer saw the employee performing manual labor on a day she requested FMLA leave. 533 F.3d at 909-10 ("[T]he information gleaned from Sergeant Largent's reconnaissance was sufficient to give Raybestos an 'honest suspicion' that Vail was not using her leave 'for the intended purpose.'"). Similarly, in *Kariotis*, the company Navistar hired an investigator to videotape an employee recovering from knee surgery. 131 F.3d at 675. These videotapes revealed the employee "walking, driving, sitting, bending, and shopping." *Id.* Based solely on Navistar's prior suspicions,

10                                                      No. 11-3420

the videotapes, and a short conversation with the employee, Navistar chose to terminate the employee for misusing her disability leave. *Id.* Although Navistar never contacted the employee's physicians, and we noted that the investigation "left something to be desired," *id.*, we held that Navistar had an "honest suspicion" that the employee was misusing her leave, thus foreclosing her FMLA claim, *id.* at 680-81.

Here, Carrier suspected Scruggs was misusing his FMLA leave based upon his prior absenteeism. Accordingly, Carrier hired a private investigator to observe Scruggs on a day that he requested FMLA leave to care for his mother. The video surveillance revealed that Scruggs did not appear to leave his house that day. When Carrier questioned Scruggs, he could not recall what he did on that day, but stated that he did not misuse his FMLA leave. Although Scruggs later provided documentation from his mother's nursing home and doctor's office, this paperwork only raised further questions for Carrier. The documents Scruggs produced were facially inconsistent and conflicted with Carrier's internal paperwork. Taken together, this was enough for Carrier to have an "honest suspicion" that Scruggs misused his FMLA leave on July 24, 2007. Although Carrier could have conducted a more thorough investigation, as Scruggs fervently argues, it was not required to do so. *See Kariotis*, 131 F.3d at 681. Accordingly, Carrier did not violate Scruggs's FMLA rights because it honestly believed Scruggs was not using his leave for its intended purpose, *see Vail*, 533 F.3d at 909, and

No. 11-3420                                                  11

the district court properly granted summary judgment in favor of Carrier on Scruggs's interference claim.

B. *Retaliation Claim*

Scruggs also claims that Carrier retaliated against him for using his FMLA leave. "An employee who alleges that her employer retaliated against her for exercising her rights under the FMLA can proceed under the direct or indirect methods of proof familiar from employment discrimination litigation." *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009). Scruggs is proceeding under the direct method, so he "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 824 (7th Cir. 2011) (*quoting Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)). "A plaintiff can prevail under the direct method by showing an admission of discrimination or by 'constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'" *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008) (*quoting Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006)). Carrier argues that Scruggs cannot establish a causal connection between his use of FMLA leave and his termination.

Carrier terminated Scruggs on August 17, 2007, for misusing his FMLA leave in violation of Plant Rule 10. This 'materially adverse action' occurred over three weeks after Scruggs requested leave on July 24. Scruggs's

request for FMLA leave was not denied, nor was he prohibited from returning to work after taking his approved FMLA leave. It was not until August 7, when Carrier received a report from its investigator indicating that Scruggs had misused his FMLA leave on July 24, that Carrier began taking steps to terminate Scruggs. As we have already noted, Carrier held an 'honest suspicion' that Scruggs was misusing his FMLA leave at the time it made the decision to terminate him. We cannot conclude from these facts that Carrier intentionally discriminated against Scruggs for taking FMLA leave. If we were to hold otherwise, virtually any FMLA plaintiff fired for misusing his leave would be able to state a claim for retaliation.

Scruggs likens his case to the facts presented in *Burnett v. LFW Inc.*, 472 F.3d 471 (7th Cir. 2006). In that case, Burnett gave sufficient notice to his employer over a period of four months that he was suffering from a serious medical condition, specifically, prostate cancer. *Id.* at 482. Burnett engaged in protected activity by requesting two weeks off because he would not be able to perform the essential functions of his job. *Id.* Prior to his scheduled time off, Burnett requested to leave work one day because he "felt sick.*"* *Id.* at 476. After leaving work without his supervisor's permission, Burnett was terminated for insubordination. *Id.* We held that these facts "suggest a direct, causal connection between the protected activity and adverse action." *Id.* at 482. We noted that the employer's "classification of Burnett's conduct as insubordinate stems in large measure from its mistaken belief that Burnett was not entitled to

No. 11-3420     13

FMLA leave," and "Burnett's alleged insubordinate act *was* his request for FMLA leave, or at least a key component of it." *Id.* Accordingly, we held that a jury question remained as to Burnett's retaliation claim. *Id.*

   Scruggs claims that his case is similar to *Burnett* because Carrier's reason for terminating him was his protected activity. But there is a key distinction between this case and *Burnett*. Burnett requested and was denied leave at the same time he was deemed insubordinate and terminated. In contrast, Scruggs requested and was granted leave, took his approved leave, and returned to work the following day. He was also granted FMLA leave on three additional days following July 24, 2007. It was not until after Carrier received evidence of potential misconduct that Scruggs was terminated. Therefore, the reason for Scruggs's termination was not the same as his protected activity, and *Burnett*'s reasoning does not apply here. The district court properly granted summary judgment in favor of Carrier.

### III. CONCLUSION

   For the foregoing reasons, we AFFIRM the judgment of the district court.

8-3-12